## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM CORDOVA,** | : | **Civil No. 3:22-CV-816** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MERRICK GARLAND,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

I.    **Background**

      On February 4, 2024, a number of related cases, including the instant case, were reassigned to the undersigned for pretrial management. By way of background, in May 2022, several dozen cases were initiated in this Court involving members of the MS-13 prison gang confined at the United States Penitentiary Lewisburg (USP Lewisburg). These pleadings alleged that a January 31, 2022, "national lock down" of MS-13 members led to their unlawful transfer to USP Lewisburg and unconstitutional confinement to a "Special Management Unit" (SMU) status. This group of plaintiffs named the United States, the Federal Bureau of Prisons (FBOP), two departments within that agency and J. Meyers, all in their official capacity, seeking punitive damages, declaratory judgment, and injunctive relief pursuant to

42 U.S.C. § 1983, <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. Each of these *pro se* plaintiffs, including the plaintiff in the instant case, William Cordova, filed essentially the same civil complaint form listing MS-13 inmates and Jose Bran as the plaintiffs. Many of these cases have since been abandoned by the individual plaintiffs. <u>See</u> <u>Garcia v. United States</u>, No. 3:22-CV-00763; <u>Portillo v. United States</u>, No. 3:22-CV-00766; <u>Trejo v. United States</u>, No. 3:22-CV-00772; <u>Chach v. United States</u>, No. 3:22-CV-00773; <u>Cruz-Flores v. United States</u>, No. 3:22-CV-00781; <u>Amaya v. United States</u>, No. 3:22-CV-00782; <u>Reyes v. United States</u>, No. 3:22-CV-00787; <u>Lopez v. United States</u>, No. 3:22-CV-00789; <u>Chavez v. United States</u>, No. 3:22-CV-00796; <u>Sorto v. United States</u>, No. 3:22-CV-00798; <u>Rodriguez v. United States</u>, No. 3:22-CV-00800; <u>Mejia-Ramos v. United States</u>, No. 3:22-CV-00802; <u>Rivera v. United States</u>, No. 3:22-CV-00805; <u>Velasquez-Cruz v. United States</u>, No. 3:22-CV-00810. Other complaints were dismissed for failure to state a claim upon which relief could be granted. <u>See</u> <u>Parada-Mendoza v. United States</u>, No. 3:22-CV-00771, 2023 WL 5919300 (M.D. Pa. June 21, 2023), <u>report and recommendation adopted,</u> No. CV 3:22-771, 2023 WL 5608401 (M.D. Pa. Aug. 30, 2023); <u>Rubio v. United States</u>, No. 3:22-CV-00779, 2022 WL 4080247 (M.D. Pa. Sept. 6, 2022); <u>Rodriguez v. United States</u>, No. 3:22-CV-00780, 2022 WL 4080767, at *1 (M.D. Pa. Sept. 6, 2022); <u>Luis v. United States</u>,

No. 3:22-CV-00786; <u>Alfaro v. United States</u>, No. 3:22-CV-00791; <u>Manjivar v. United States</u>, No. 3:22-CV-00807; <u>Paiz-Cornejo v. United States</u>, No. 3:22-CV-00756; <u>Bonilla v. United States</u>, No. 3:22-CV-00815.

Interestingly, the plaintiff who first initiated this slew of litigation on behalf of the MS-13 inmates, Jose Bran, voluntarily dismissed his case, "due to the settlement of the FTC and the starting of transfers and designations are [sic] commencing by the FBOP." <u>Bran v. United States</u>, No. 3:22-CV-00755, (Doc. 103). Indeed, it appears several of the initial plaintiffs in this case, including Cordova, have been transferred to other prison facilities or released since the inception of this litigation. <u>See</u> <u>Argueta v. United States</u>, No. 3:22-CV-00758; <u>Ramirez v. United States</u>, No. 3:22-CV-00797; <u>Ramos-Jimenez v. United States</u>, No. 3:22-CV-00799; <u>Garcia v. United States</u>, No. 3:22-CV-00817.

The instant *pro se* plaintiff, William Cordova, is serving a life sentence imposed by the United States District Court for District of Columbia for Conspiracy to Commit Violent Crimes, Maiming, and Murder in the Aid of Racketeering, Illegal Alien in Possession of a Firearm, and Assault with a Dangerous Weapon. Cordova was incarcerated at the United States Penitentiary Lewisburg (USP Lewisburg) from March 8, 2022, to March 14, 2023, and was briefly transferred to the United States Penitentiary Hazelton between March 14, 2023, and March 20, 2023. He then returned to USP Lewisburg from March 20, 2023, until August 20, 2024, when he

3

transferred to the United States Penitentiary Big Sandy in Inez, Kentucky. (Doc. 62 ¶¶ 1, 2). Following extensive pretrial proceedings in which this Court disposed of a variety of class allegations set forth in the original collective complaints filed in this case, on January 19, 2024 Cordova filed an amended complaint in this lawsuit. (Doc. 27). This amended complaint is the operative pleading in this case.

In his amended complaint, Cordova alleges that his assignment to a Security Threat Group (STG) has subjected him to prolonged restricted confinement without prison privileges, and contends that this prolonged restricted confinement, despite him never being found guilty of creating any disturbance which would justify placement in the SHU, violates his rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. (Id.) He also enigmatically alleges that his confinement in the SHU is an ethics violation by the defendants which somehow rises to the level of either a breach of contract or some form of professional negligence.[1] (Id.) Cordova sought compensatory damages and

---

[1] The exact nature of this cause of action is unclear. It appears the plaintiff concedes that ethical violations cannot form the basis of a federal complaint, however he asks the court to consider these ethical violations in the context of professional negligence and breach of contract claims against the defendants. However, beyond his conclusory statements that he is alleging breach of contract and negligence against the defendants, his complaint is devoid of any factual averments pleading the elements of either cause of action. Further, as the court found in a related case, under the FTCA, we lack jurisdiction over any claim by Cordova sounding in tort, such as negligence, for which the plaintiff has not filed any administrative tort claims. See 28 U.S.C. § 2675(a); see also Alfaro v. United States, No. 3:22-CV-00791.

injunctive relief, in the form of a restoration of all privileges and a transfer from USP Lewisburg. (Id.)

The defendants have now filed a motion to dismiss this amended complaint, or in the alternative, for summary judgment. (Doc. 58). In this motion the defendants argue that this amended complaint is deficient on multiple scores, including failure to exhaust administrative remedies and failure to state a claim under Bivens. This motion is fully briefed and is ripe for resolution.

Guided by the Court's analysis in the related cases to this cause of action, we will grant the defendants' motion and dismiss this case.

## II.    **Discussion**

### A. **Motion to Dismiss – Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

---

Accordingly, any negligence or breach of contract claims asserted by the plaintiff will be dismissed.

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

6

actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." Id. A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.'"

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the

pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. **Motion for Summary Judgment – Standard of Review**

The defendants have also moved for summary judgment on some of Johnson's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a

material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party. Big Apple BMW,

Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where

the non-moving party's evidence contradicts the movant's, then the non-movant's

must be taken as true. Id. Additionally, the court is not to decide whether the

evidence unquestionably favors one side or the other, or to make credibility

determinations, but instead must decide whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see

also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third

Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not
> match, item for item, each piece of evidence proffered by the movant.
> In practical terms, if the opponent has exceeded the "mere scintilla"
> threshold and has offered a genuine issue of material fact, then the court
> cannot credit the movant's version of events against the opponent, even
> if the quantity of the movant's evidence far outweighs that of its
> opponent. It thus remains the province of the fact finder to ascertain the
> believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial." Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal

quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d

464, 476 (3d Cir. 2011).

13

C. **The Plaintiff's Claims Are Unexhausted and Barred by the Federal Prison Litigation Reform Act (PLRA)**

Cordova's claims encounter several insurmountable legal obstacles. At the outset, the defendants contend that the plaintiff's <u>Bivens</u> claims are entirely unexhausted because, although he did file some grievances claiming improper administrative detention and conditions of confinement, his grievances were untimely, and he failed to complete the appeals process through all levels and never received a final response on the merits from the Central Office. As the defendants aptly point out, under the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all avenues of relief available within a prison's grievance system before bringing a federal civil rights action concerning prison conditions. 42 U.S.C. § 1997e(a); <u>Booth v. Churner</u>, 206 F.3d 289, 291 (3d Cir. 2000).

This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory. <u>Williams v. Beard</u>, 482 F.3d 637, 639 (3d Cir. 2007); <u>see also</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); <u>Nyhuis v. Reno</u>, 204 F.3d 65, 67 (3d Cir. 2000) (same). Moreover, "it is beyond the power of

[any] court ... to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies, an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements. Id. at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

On this score, "[t]o properly exhaust the BOP's administrative remedies, an inmate must generally: (1) attempt an informal resolution with staff at the institution; (2) file a formal complaint with the institution; (3) file an appeal to the appropriate regional director; and (4) file an appeal to the General Counsel at the Central Office." Bakhtiari v. Spaulding, 779 F. App'x 129, 133 n.3 (3d Cir. 2019) (citing 28 C.F.R. § 542.10-.15). An inmate's failure to comply with the exhaustion requirement prescribed by the PLRA is an affirmative defense, Jones v. Bock, 549 U.S. 199, 216 (2007), and the burden of proving a failure to exhaust rests with the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Finally, "exhaustion

is a prerequisite to suit." <u>Porter v. Nussle</u>, 534 U.S. 516, 524, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002). Therefore, inmates must comply with this requirement in a timely manner before they commence litigation.

In support of their motion for summary judgment, the defendants complied with Local Rule 56.1 by filing a statement of facts that they asserted were undisputed, focusing on the issue of exhaustion, pointing to evidence of Cordova's tardy, halting and incomplete use of the BOP grievance system. (Doc. 62). Local Rule 56.1 also requires that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried." LR 56.1. Failure to comply with this rule has real consequences for litigants, since "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." <u>Doe v. Winter</u>, No. 04–CV–2170, 2007 U.S. Dist. LEXIS 25517, *2 n. 2, 2007 WL 1074206 (M.D.Pa. Apr. 5, 2007) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)).

In the instant case, Cordova has not filed a proper counterstatement of facts in accordance with M.D. Pa. Local Rule 56.1. Thus, the facts averred by the defendants with regard to the grievances filed by Cordova are essentially undisputed.

Those largely undisputed facts are set forth in a sworn declaration by Jennifer Knepper, Supervisory Attorney at USP Lewisburg and custodian of the administrative remedies, as well as a record of filed administrative remedies at USP Lewisburg. This declaration reveals the following concerning Cordova's exhaustion of administrative remedies: Cordova submitted two potentially relevant grievances to prison officials, but these grievances were flawed in two fundamental ways. First, neither grievance was submitted prior Cordova commencing this lawsuit in May of 2022/ In fact, Cordova did not even commence the grievance process prior to filing suit. Additionally, Cordova  never fully exhausted his administrative remedies with respect to the issues raised in this amended complaint.

Specifically, on September 30, 2022—some four months after commencing this litigation—the institution received a grievance from Cordova in which he claimed improper detention and cruel conditions of confinement. (Doc. 62, Ex. 1 ¶ 8, Attach. C at 5.) On October 13, 2022, the Warden denied this grievance, but Cordova never appealed that denial. (Id., Ex. 1 ¶ 8, Attach. C at 5-6.)

Some nine months later on July 13, 2023, more than a year after this lawsuit began, the institution received another grievance from Cordova requesting a transfer to an active yard, lifting of restrictions, and access to programs. (Id., Ex. 1 ¶ 9, Attach. C at 6.) The Warden denied this grievance and Cordova appealed the Warden's denial to the Bureau of Prisons' Northeast Regional Office on August 7,

2023. (Id.) The Regional Director denied this grievance on January 22, 2024, and Cordova did not appeal that denial to the Central Office level as he was required to do. (Id.)

Thus, Cordova's grievances violated two basic precepts underlying the PLRA. First, none of these grievances was filed prior to Cordova initiating this lawsuit violating the rule that "exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524. In addition, none of the grievances was fully exhausted, as required by law. Accordingly, given this undisputed evidence we conclude that Cordova has failed to exhaust his administrative remedies with respect to his Bivens claims, and these claims should be dismissed.

## D. **The Plaintiff's Constitutional Claims Fail as a Matter of Law.**

Moreover, setting aside the plaintiff's failure to exhaust his administrative remedies, the plaintiff's complaint fails to state a claim of a constitutional dimension demonstrating he is entitled to relief. Broadly construed, Cordova asserts that the Defendants' actions after the national lockdown of MS-13 gang members were a form of retaliation against him for exercising his First Amendment rights, interfered with his right of access to the courts, violated his due process rights under the Fifth and Fourteenth Amendments and constituted a form of cruel and unusual punishment forbidden by the Eighth Amendment.

However, as discussed below, regardless of how Cordova attempts to garb these constitutional claims, they all fail under the new and emerging legal standards which govern the analysis and extension of <u>Bivens</u> liability.

### 1. **Cordova's First Amendment Claims Fail**

Our analysis of these claims begins with an historic understanding of the scope of constitutional tort liability. In 1871, Congress passed the statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983. That statute entitles an injured person to money damages if a state official violates his or her constitutional rights. <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017). However, Congress did not enact an analogous vehicle for plaintiffs to sue federal officials for damages. <u>Id.</u>  Thus, Congress has never deemed it fit to extend individual constitutional tort liability to federal actors. "Indeed, in the 100 years leading up to <u>Bivens</u>, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." <u>Id.</u>

In 1971, however, the Supreme Court decided <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 389, 91 S. Ct. 1999, 2001 (1971), holding that even absent statutory authorization it would enforce a damages remedy to compensate persons who are injured by federal officials who violated the prohibition against unreasonable searches and seizures in violation of the Fourth Amendment. <u>Bivens</u>, 403 U.S. at 397. The Supreme Court subsequently extended

the <u>Bivens</u> implied cause of action in two other cases involving constitutional violations. In the first, an administrative assistant alleged that a Congressman discriminated against her on the basis of gender, and the Supreme Court found that the Fifth Amendment Due Process Clause gave her a damages remedy. <u>Davis v. Passman</u>, 442 U.S. 228, 248-49 (1979). The following year, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishments gave a prisoner a cause of action for damages against prison officials who failed to treat his asthma. <u>Carlson v. Green</u>, 446 U.S. 14, 19 (1980). "These three cases— <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." <u>Ziglar</u>, 137 S. Ct. at 1855.

In 2017, the Supreme Court's decision in <u>Ziglar</u> signaled a fundamental change in this analytical paradigm, and courts were enjoined to exercise great care and restraint before concluding that <u>Bivens</u> applies in any new factual context. As the Court explained: "[E]xpanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity." <u>Ziglar</u>, 137 S. Ct. at 1857 (indicating a multitude of cases where the Court declined to extend the <u>Bivens</u> remedy).  After <u>Ziglar</u>, in order for a court to expand <u>Bivens</u> to new claims, the court must first decide if the case presents a new context for <u>Bivens</u> cases. The Court stated the test to determine if a case presents a new context in which a <u>Bivens</u> remedy is available in the following terms:

> If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Ziglar</u>, 137 S. Ct. at 1159-60.

If the case presents a new <u>Bivens</u> context, the court must then determine whether any alternative remedies exist, and even absent an alternative remedy, if special factors counsel hesitation in extending the <u>Bivens</u> remedy. <u>Ziglar</u>, 137 S.Ct. at 1859-60; <u>see also</u> <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007); <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983). Applying this analysis, Courts have generally rebuffed efforts to extend <u>Bivens</u> beyond its carefully defined historic contours.

In the instant case, Cordova invites us to do what the Supreme Court now condemns as a disfavored judicial activity and extend <u>Bivens</u> into new settings. At the outset, Cordova wishes to pursue a First Amendment retaliation claim in a new <u>Bivens</u> context under the First Amendment that is subject to the <u>Ziglar</u> analysis. <u>See</u> <u>Vanderklok v. United States</u>, 868 F.3d 189, 199-200 (3d Cir. 2017) ("We must look at the issue anew in this particular context . . . and as it pertains to this particular

21

category of defendants . . .") While <u>Ziglar</u> did not entail First Amendment retaliation claims, like those advanced here, the United States Court of Appeals for the Third Circuit has expressly extended the <u>Ziglar</u> analysis to First Amendment retaliation claims arising in an institutional security and safety context and has held that after <u>Ziglar</u> courts should not imply the existence of such claims under <u>Bivens.</u> Thus, while the Third Circuit had implied First Amendment causes of action under <u>Bivens</u> in the past, in light of <u>Ziglar</u>, the Court found it necessary to reevaluate its approach and decline to extend Bivens to First Amendment retaliation claims in the context of airport security screeners, <u>Vanderklok v. United States</u>, 868 F.3d 189 (3d Cir. 2017), and in the prison context. <u>See</u> <u>Mack v. Yost</u>, 968 F.3d 311 (3d Cir. 2020); <u>Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel</u>, No. 16-3222, 2018 WL 501365, at *3 n.3 (3d Cir. Jan. 22, 2018).

As to such claims:

> [T]he United States Court of Appeals for the Third Circuit has signaled ... that <u>Bivens</u> may not extend to First Amendment retaliation claims in the prison context. In <u>Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel</u>, No. 16-3222, 2018 WL 501365, at *3 n.3 (3d Cir. Jan. 22, 2018), the court of appeals affirmed the dismissal of a First Amendment retaliation claim brought by a federal prisoner against correctional staff. In agreeing that dismissal of this claim was appropriate the appellate court observed, in part, that: "[A] First Amendment retaliation claim ..., may not apply to a <u>Bivens</u> claim against a federal official. <u>See</u> <u>Vanderklok v. United States</u>, 868 F.3d 189, 199 (3d Cir. 2017) (holding that '<u>Bivens</u> does not afford a remedy against airport security screeners who allegedly retaliate against a traveler who exercises First Amendment rights'); <u>see</u>

> also <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4, 132 S.Ct. 2088, 182
> L.Ed.2d 985 (2012) (stating that '[w]e have never held
> that <u>Bivens</u> extends to First Amendment claims')." <u>Id.</u> While
> the <u>Watlington</u> decision is not precedential, it is highly persuasive as a
> "paradigm of the legal analysis [this Court] should ... follow.;" <u>Drinker
> v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996), and the
> court's express reliance upon <u>Vanderklok</u> and extension
> of <u>Vanderklok</u>'s holding to <u>Bivens</u> First Amendment retaliation claims
> in a federal correctional context is not something that we are free to
> ignore or discount.

<u>Randolph v. FCI Allenwood (Med)</u>, No. 1:17-CV-786, 2018 WL 2276246, at *10

(M.D. Pa. Apr. 24, 2018), <u>report and recommendation adopted</u>, No. 1:17-CV-786,

2018 WL 2263733 (M.D. Pa. May 17, 2018).

   More recently, in <u>Mack v. Yost</u>, the Third Circuit recognized that extending

<u>Bivens</u> in a new context poses separation of powers concerns and cautioned against

extending <u>Bivens</u> particularly in the prison context, stating that "[b]ecause courts are

not in a position to second-guess the administrative policies and functions

historically within the executive's domain, we must exercise restraint if judicial

intervention would ultimately interfere with executive functions." 968 F.3d 311, 322

(3d Cir. 2020) (citing <u>Ziglar</u>, 137 S. Ct. at 1860); <u>see also</u> <u>Mammana v. Barben</u>, 856

F. App'x 411, 415-16 (3d Cir. May 21, 2021). Indeed, in <u>Mack</u>, the Third Circuit

declined to extend a <u>Bivens</u> cause of action for First Amendment retaliation in the

prison workplace, finding that "[e]xpanding <u>Bivens</u> in the context presented here

would . . . invite intrusive judicial inquiry into the BOP's administrative decisions."

Id. In light of this express holding by the Court of Appeals, any First Amendment Bivens retaliation claim by this inmate fails as a matter of law and must be dismissed.

Cordova cannot save this First Amendment claim by recasting his allegations in terms of First Amendment access to courts claim. Such claims also fail under the Ziglar analysis since "this Court has previously found on several occasions that Bivens does not extend to First Amendment access-to-courts claims." Jones v. Bradley, No. 4:21-CV-00026, 2023 WL 2088430, at *3 (M.D. Pa. Feb. 17, 2023) citing Bossio v. Spaulding, No. 4:20-cv-01777, 2021 WL 4123975, at *4 (M.D. Pa. Sept. 9, 2021) (Brann, C.J.) (concerning allegation of destruction of personal property); Railey v. Ebbert, 407 F. Supp. 3d 510, 521 (M.D. Pa. 2019) (Rambo, J.) (concerning allegations of interference with and destruction of mail); Simmons v. Maiorana, 3:16-cv-1083, 2019 WL 4410280, at *13 (M.D. Pa. Aug. 23, 2019) (Arbuckle, J.) (Rep. and Recom.), adopted by 2019 WL 4412296 (M.D. Pa. Sept. 13, 2019) (Munley, J.) (concerning allegation of being denied postage stamps); Alsop v. Fed. Bureau of Prisons, 2020 WL 13282134, at *—— – ——, 2020 U.S. Dist. LEXIS 182851, at *22 - *23 (M.D. Pa. Sept. 30, 2020) (Saporito, M.J.) (Rep. and Recom.), adopted by 2021 WL 784646 (M.D. Pa. Mar. 1, 2021) (Mariani, J.) (concerning allegations of being refused grievance forms and the processing of grievances); see also Vanderklok v. United States, 868 F.3d 189, 198 (3d Cir. 2017)

("The Supreme Court has never implied a <u>Bivens</u> action under any clause of the First Amendment.")

Given this rising tide of case law refusing to extend Bivens into the new context of First Amendment claims in a correctional setting, Cordova's efforts to infer a First Amendment <u>Bivens</u> cause of action in this particular custodial context fail as a matter of law. Accordingly, we will decline to extend <u>Bivens</u> in this case and will dismiss the First Amendment claims against the individual defendants.

### 2. **<u>Cordova's Eight Amendment Claims Also Fail.</u>**

Cordova's claim that he was subjected to extreme conditions of confinement in violation of the Eighth Amendment suffer a similar fate in light of <u>Ziglar.</u> This claim also fails when considered in light of the <u>Bivens</u> analysis now mandated by the Supreme Court. In <u>Mammana v. Barben</u>, 856 Fed.Appx. 411 (3d Cir. 2021), affirmed the District Court's decision not to extend <u>Bivens</u> to an Eighth Amendment claim regarding conditions of confinement. The Third Circuit reasoned:

> The Supreme Court has recognized *Bivens* claims three times: 1) the Fourth Amendment search-and-seizure in <u>Bivens</u>, 2) a Fifth Amendment sex-discrimination claim in <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and 3) "in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." <u>Hernandez II</u>, 140 S. Ct. at 741. Here, all agree that of these three, only Carlson is relevant.
>
> <u>Carlson</u> involved an allegation that prison officials were deliberately indifferent to an inmate's medical needs during a severe asthma

attack. 446 U.S. at 16 & n.1, 100 S.Ct. 1468. But little links <u>Carlson</u> to Mammana's claims beyond federal prison employees and alleged Eighth Amendment violations. Mammana alleges Barben violated the Eighth Amendment through his "deliberate indifference to the substantial risk of harm posed by Mr. Mammana's mistreatment in the Yellow Room." (Opening Br. at 15.) Mammana challenged "his confinement in a chilled room with constant lighting, no bedding, and only paper-like clothing." <u>Mammana I,</u> 934 F.3d at 370. All of which "bear little resemblance to ... a claim against prison officials for failure to treat an inmate's asthma." <u>Abbasi</u>, 137 S. Ct. at 1860. And the Supreme Court has made clear that "even a modest extension [of <u>Bivens</u>] is still an extension," <u>id</u>. at 1864, and "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." <u>Hernandez II</u>, 140 S. Ct. at 743.

<u>Mammana v. Barben</u>, 856 F. App'x 411, 414 (3d Cir. 2021). More recently the Court of Appeals reaffirmed that an "Eighth Amendment conditions-of-confinement claim presents a novel <u>Bivens</u> context." <u>Kalu v. Spaulding</u>, 113 F.4th 311, 338 (3d Cir. 2024) and found that an inmate "Eighth Amendment conditions-of-confinement claim is ineligible for <u>Bivens</u> remedies." <u>Id.</u> at 340. In light of this controlling legal precedent, Cordova's Eighth Amendment condition of confinement claims also fail as a matter of law and must be dismissed.

### 3.  **Cordova's Due Process Claims Fail**.

Nor can Cordova sustain a Fifth Amendment due process claim under <u>Bivens</u> in light of <u>Ziglar</u> and its progeny. It is now generally conceded that such inmate due process claims also present new factual contexts under <u>Ziglar</u>. <u>Railey v. Ebbert</u>, 407 F. Supp. 3d 510, 522 (M.D. Pa. 2019) (collecting cases). Moreover, we have found

26

that the challenge of prison administration prison administration  constitutes "a special factor precluding the extension of <u>Bivens</u> to [an inmate's] Fifth Amendment due process claim." <u>Louis-El v. Ebbert</u>, 448 F. Supp. 3d 428, 440 (M.D. Pa. 2020). Therefore, these claims also fail and will be dismissed.

### E. <u>The Plaintiff's Is Not Entitled to Compensatory Damages or Injunctive Relief.</u>

The plaintiff's prayers for relief similarly fail as a matter of law. First, with respect to his request for compensatory damages, the Prison Litigation Reform Act (PRLA) would seem to bar such claims for purely emotional distress damages in the absence of any physical injury. Rather:

> The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); <u>see also</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 533 (3d Cir. 2003)..... Accordingly, [where an inmate-plaintiff claims damages for emotional or mental injury] § 1997e(e) bars him from recovering compensatory damages on his federal claims. <u>See</u> <u>Herman v. Holiday</u>, 238 F.3d 660, 666 (5th Cir. 2001) (holding that § 1997e(e) barred damages claims based on emotional distress stemming from fear of asbestos exposure); <u>Davis v. Dist. of Columbia</u>, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that § 1997e(e) barred claims for emotional injury despite physical manifestations of weight loss, appetite loss, and insomnia).

<u>Michel v. Levinson</u>, 437 Fed.Appx. 160, 163–64 (3d Cir. 2011). Cordova has not alleged he has suffered any physical harm as a result of his confinement. To the extent that Cordova is attempting in this complaint to plead a claim

for compensatory damages based upon emotional distress alone his failure to plead any physical injury resulting from this alleged constitutional infraction precludes any recovery for these damages under the PLRA. Palencia v. New FBOP Dir., No. 3:22-CV-808, 2024 WL 1600331, at *10 (M.D. Pa. Feb. 20, 2024), report and recommendation adopted sub nom. Palencia v. Fed. Bureau of Prisons, No. 3:22-CV-00808, 2024 WL 1134709 (M.D. Pa. Mar. 15, 2024).

Further, to the extent that the plaintiff seeks injunctive relief in the form of a transfer from USP Lewisburg or a change in his security designation, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert. denied, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976). Therefore, this claim fails on its merits.

Further , to the extent that Cordova was seeking injunctive relief from officials at USP-Lewisburg his transfer to USP-Big Sandy renders his motion for injunctive relief moot. In this setting, the United States Court of Appeals for the Third Circuit has observed that, when addressing inmate requests for injunctive relief:

28

> As a preliminary matter, we must determine whether the inmates'
> claims are moot because "a federal court has neither the power to render
> advisory opinions nor to decide questions that cannot affect the rights
> of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395,
> 401 (1975) (quotations omitted); see also Abdul-Akbar v. Watson, 4
> F.3d 195, 206 (3d Cir.1993). An inmate's transfer from the facility
> complained of generally moots the equitable and declaratory claims.
> Abdul-Akbar, 4 F.3d at 197 (former inmate's claim that the prison
> library's legal resources were constitutionally inadequate was moot
> because plaintiff was released five months before trial).

Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003). Indeed, as this court has previously observed, in a case such as this, where an inmate seeks injunctive relief against his jailers but is no longer housed at the prison where these injunctive claims arose: "[the prisoner-plaintiff's] transfer to another institution moots any claims for injunctive or declaratory relief." Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa.1998), citing Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3rd Cir.1993); Weaver v. Wilcox, 650 F.2d 22, 27 (3rd Cir.1981). Therefore, this request for injunctive relief is both meritless and moot. Simply put, as a legal matter Cordova has no constitutional right to choose his prison  and his request for injunctive relief is now moot. Therefore, this prayer for extraordinary injunctive relief will be denied.

## F.  The Amended Complaint Should Be Dismissed with Prejudice.

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its pleading once as a matter of course, if amended within a specified time period, or with the opposing party's consent or leave of court. Fed. R. Civ. P. 15(a). A court

"should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Yet, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion when ruling upon a motion to amend and may deny a request for leave to amend. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267 (3d Cir. 2001). The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are resolved on their merits rather than on technicalities. Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990); see also ICU Medical, inc. v. RyMed Technologies, Inc., 674 F.Supp.2d 574, 577 (D. Del. 2009). Under this standard, amendment of pleadings ordinarily should be allowed absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, given the repeated failures by the plaintiff to state a claim of a constitutional dimension, the inability of Cordova to extend Bivens liability into these new fields, and the obstacles faced due to his failure to properly exhaust his administrative remedies, we believe that granting the plaintiff leave to present yet

another amended complaint would be futile. Accordingly, the amended complaint will be dismissed with prejudice.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: January 2, 2025